UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
EUGENE FINNEGAN,

          Plaintiff,

  -against-                       **MEMORANDUM AND ORDER**
                                  1:16-cv-03939(FB)
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.
-------------------------------------------------x

*Appearances:*
*For the Plaintiff*                            *For the Defendant*
PHILIP HOWARD SEELIG           JOSEPH A. MARUTOLLO
Seelig Law Office, LLC               BRIDGET M. ROHDE
299 Broadway, Suite 1600          U.S. Attorney's Office, EDNY
New York, NY 10007                  271 Cadman Plaza East
                                                Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

      Eugene Finnegan ("Finnegan") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits under Title II of the Social Security Act. Both parties move for judgment on the pleadings. For the reasons below, Finnegan's motion is granted and the Commissioner's motion is denied. The case is remanded for calculation of benefits.

## I

      Finnegan suffers from asthma, knee, and back problems, including lumbar disc displacement, a chronic ACL tear, bilateral knee pain, and radiculopathy. He also has

tinnitus and Gastroesophageal Reflux Disease ("GERD"). Many of his problems stem from his time in the Marine Corps and as a firefighter for the Fire Department of the City of New York ("FDNY").

Finnegan sees a bevy of specialists and doctors for his problems. He treats regularly with Dr. Mark Brandon, M.D., and Dr. Joseph Giovinazzo, M.D., for his knee issues, Dr. Ann Marie Stillwell for pain management, Dr. Frank Acerra, M.D., Dr. Michael Weiden, and Dr. Anne Duque, M.D., for his asthma, and Dr. Diane Kaplinsky, M.D., for his primary care. He has also seen Dr. Allan B. Perel, M.D. for his back pain, Dr. Ludmila Feldman, M.D. for his back and hip pain, Dr. Isabella Feldman, M.D., for his back and hip pain, Dr. Tamara Saukin, M.D., for his knee issues, and Dr. Mark Carney, M.D. for tinnitus. Finally, on one occasion, he had a consultation with Dr. Vinod Thukral, M.D., the Commissioner's consultative examiner.

Finnegan suffers from four to eight asthma attacks a week, lasting an average of an hour, though his worst asthma attacks can last up to an entire day. He has never been hospitalized for his asthma.

Finnegan requires knee braces for his chronically torn ligaments but still has instability and difficulty kneeling, squatting, and walking. He has had one unsuccessful ACL surgery. His knee doctors have recommended he undergo additional surgery. He has declined to do so because of concerns of being unable to help care for his children

and the recommendation of Dr. Stilwell, who believes "with his severe asthma, these surgeries would be high risk anesthetically, and therefore, I cannot advise surgery." AR 806.[1]

Finnegan's treating physicians are almost unanimous in their opinion that he is totally disabled by his combination of issues. Dr. Stillwell opined that Finnegan was limited to less than one hour standing and four hours sitting in an eight hour work day, required bed rest during the work day, would be off task more than 10% of the day, and would require an average of 3 or more sick days per month. She based her opinion on his persistent back and knee pain and "permanently injured" lungs, as well as the failure of physical therapy, pain medication, and cortisone injections to treat his issues. Dr. Giovinazzo found the same material limitations.

Dr. Acerra stated that Finnegan would be unable to work because of his need to avoid irritants that exasperate his asthma and concurred that Finnegan would need at least 3 sick days per month. Drs. Weiden and Duque, who treated Finnegan when he was still with the FDNY, indicated that he was incapable of even low stress jobs due to his respiratory conditions and agreed that he needed at least 3 sick days per month. The one dissenter among Finnegan's treating physicians, Dr. Brandon, believes that Finnegan did not qualify for SSI "simply because of an ACL rupture" and reserved

---

[1] AR refers to the Administrative Record.

judgment until after Finnegan completed a second surgery (though he formed this opinion before Dr. Stilwell voiced her concerns about the "high risk" of anaesthesia due to Finnegan's asthma). As a knee specialist, he did not opine on the impact of Finnegan's overall combination of symptoms and based his determination solely on Finnegan's ruptured ACL. Dr. Thukral, the consultative examiner, diagnosed Finnegan with the same problems as the treating physicians but disagreed on the severity of the symptoms, finding they were not disabling. However, his assessment was based on a single consultation, and he was not a specialist in any of the areas in which Finnegan faced problems.

## II

Finnegan filed his application for disability benefits on February 4, 2013, alleging a disability onset date of December 29, 2012. His application was denied. He sought a hearing with an ALJ, which was held on November 20, 2014.

The ALJ denied Finnegan's application in a decision dated February 23, 2015. Applying the familiar five-step evaluation process[2], the ALJ first determined that

---

[2] Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)(v)). The burden of proof is on the claimant

4

Finnegan had not engaged in substantial gainful employment between his alleged onset date and his date last insured (December 31, 2016). Second, the ALJ found that Finnegan suffered the following severe impairments: degenerative disc disease, degenerative joint disease in the bilateral knees, recurrent torn ACLs in the bilateral knees, and asthma. Third, the ALJ determined Finnegan's impairments did not meet the requirements of a listed impairment. Fourth, the ALJ found the Finnegan had the residual functional capacity ("RFC") to perform sedentary work, with the following restrictions:

> [Finnegan] can never climb ramps or stairs . . . . He can never climb ladders, ropes, or scaffolds. He can occasionally balance or stoop. He can never kneel, crouch, or crawl. He must avoid concentrated exposure to extreme temperatures, wetness, and humidity. He must avoid even moderate exposure to respiratory irritants such as fumes, odors, dusts, gases, perfumes, and all other respiratory irritants.

Applying that RFC to the remaining step, the ALJ found that Finnegan could not perform his past work but could perform work existing in significant numbers in the national economy—specifically, clerical worker, counselor, and order clerk.

The Appeals Council subsequently denied Finnegan's request for review on May 27, 2016, rendering final the Commissioner's decision to deny benefits. On July 15, 2016, Finnegan sought timely judicial review.

---

in the first four steps, but shifts to the Commissioner at the fifth step. *Id.* At the fifth step, the Commissioner need only show "that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)).

**III**

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If contradictions appear in the record and an ALJ fails to reasonably explain why he or she opted for one interpretation over another, the Commissioner's findings must fall. *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . .").

Finnegan argues the ALJ improperly penalized him for not pursuing surgical options, disregarded the treating physician rule, failed to develop the record, and erred in making a credibility assessment regarding Finnegan's statements. The Court agrees.

**A.   Failure to Pursue Surgery**

As an initial matter, Finnegan is correct that the ALJ improperly held his decision to forgo surgery against him. The ALJ's decision repeatedly emphasized this choice as a basis for her finding that Finnegan's impairments were not as severe as Finnegan and his doctors claimed. However, the ALJ did not consider Finnegan's reasons for forgoing surgery—that it would negatively impede his responsibilities to his family and that Dr.

Stillwell advised him that the required anaesthesia posed an unacceptably high risk due to complications with his asthma.

SSR 82-59 "delineates a set of procedural safeguards that must be followed" before a finding of noncompliance with prescribed treatment can be made. *Grubb v. Apfel*, 2003 WL 23009266, at *5 (S.D.N.Y. 2003). It specifically provides two justifications for failing to follow a prescribed treatment that are material here—that a second treating medical source advised against it, and that it carried a high degree of risk. SSR 82-59. These are precisely the reasons Finnegan opted out of the surgery.

Therefore, to the extent that the ALJ relied upon Finnegan's decision to opt out of surgery, she erred.

B.     **Treating Physician Rule**

The ALJ further erred in disregarding the conclusions and evaluations of all of Finnegan's treating physicians in favor of a single consultation with Dr. Thukral.

A treating physician's opinion on the nature and severity of a claimant's symptoms is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimaint's] case record." 20 C.F.R. § 404.1527(c)(2). "[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362

7

F.3d 28, 32 (2d Cir. 2004).

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4). An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider the following factors to determine how much weight to give the opinion: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. *Id.*; 20 C.F.R. § 404.1527(c)(1)-(6).

The ALJ did not apply these factors when weighing the opinions of treating physicians Drs. Giovinazzo, Stillwell, Acerra, Weiden, and Duque against non-treating physician Dr. Thurkul. Instead, the ALJ simply said she "accords little weight to all of these opinions" (referring to the treating physicians) because "their opinions are highly inconsistent with the medical evidence of record." AR 19.

If the ALJ had considered these opinions under the correct factors, she would have been compelled to come to the opposite conclusion. The treatment relationship with these physicians was long and repeated; the physicians saw Finnegan on a regular basis over a period of years and had a strong relationship with him and understanding of his conditions. The physicians' findings of disability are strongly supported by the

8

evidence, which shows that all treatment of his knee and back problems had failed, including surgery, pain medication, physical therapy, and cortisol injections, and that his asthma attacks came four to eight times a week and could disable him for as much as a day at time. The record as a whole is largely consistent; only Dr. Thurkul, who met with Finnegan on a single occasion, contradicted the other doctors. All these doctors were specialists. No other evidence brought to the ALJ's attention cuts the other way.

At best, the ALJ could point to Dr. Brandon's hesitance to support a need for SSI benefits until a second surgery was performed. However, Dr. Brandon's opinion was based *only* on Finnegan's ACL problems and did not factor his asthma or back problems into his conclusion (nor could he, as he was a knee specialist). Further, Dr. Brandon conditioned his opinion on the belief that Finnegan may achieve positive results from future surgery, but he did not know that Finnegan's asthma prevented him from pursuing these surgeries. Therefore, Dr. Brandon's opinion is not inconsistent with those of Finnegan's other treating physicians.

Even Dr. Thurkul's opinion is not entirely inconsistent with the treating physicians. He too noted that Finnegan was limited on account of his asthma. Regardless, Dr. Thurkul is not a specialist, and Finnegan's treating physicians are. "We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Therefore, Dr. Thurkul's opinion is insufficient

to overcome the diagnoses of Finnegan's treating physicians offered in their areas of specialty.

In particular, Dr. Stilwell, Finnegan's pain specialist, was in a position to factor *all* of Finnegan's impairments together, not simply the knee, back, or asthma symptoms in isolation. Dr. Stilwell opined that Finnegan was entirely disabled because of his permanently injured lungs, arthritic, painful knees and back, and inability to pursue surgery because of the risks of anaesthesia. No other doctor was so positioned to fully understand Finnegan's constellation of health issues and how they interacted.

Finally, to any extent the ALJ was concerned about inconsistencies or lack of support in the record relied upon by the treating physicians, the ALJ has a *sua sponte* duty to contact the treating physicians to determine if the required information was available. *Cleveland v. Apfel*, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000); *see also* 20 C.F.R. § 404.1512(b)(1). The ALJ failed to do so.

## C.  Remand for Calculation of Benefits

"Where the record provides persuasive proof of disability and a remand for further evidentiary proceeding would serve no purpose, the court may reverse and remand solely for the calculation and payment of benefits." *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 272 (E.D.N.Y. 2015). Where "reversal is based solely on the [Commissioner's] failure to sustain [her] burden of adducing evidence of [plaintiff's] capability of gainful employment and the [Commissioner's] finding that

[plaintiff] can engage in 'sedentary' work is not supported by substantial evidence, no purpose would be served by our remanding the case for rehearing unless the Secretary could offer additional evidence." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983); *see also Beckles v. Barnhart*, 340 F. Supp. 2d 285, 290-91 (E.D.N.Y. 2004) (remand solely for calculation of benefits proper where "the Commissioner failed to sustain her burden of proving that plaintiff could perform the exertional requirements of sedentary work.").

Here, the consistent opinions of Finnegan's treating physicians, and Finnegan's own self-reported pain and impairment, show he is incapable of sitting more than four hours a day or standing more than an hour. Sedentary work "generally involves up to *two hours of standing or walking* and *six hours of sitting* in an eight-hour work day . . ." *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds, as recognized in Douglass v. Astrue*, 2012 WL 4094881, at *1 (2d Cir. Sept. 19, 2012) (internal citation omitted). Because Finnegan cannot meet these exertional requirements, Finnegan is incapable of sedentary work.

Further, at the hearing, the vocational expert ("VE") was specifically asked if there was any work in the national economy for someone who needed three sick days a month because of his conditions, and the VE replied there were "[n]o jobs" that met this requirement. Finnegan's treating physicians consistently held that his symptoms would cause him to lose at least three days a month due to his impairments. Therefore, when

11

considering the correct set of facts, the VE confirmed that Finnegan's impairments bar him from *any* work in the national economy.

In a case from this district exhibiting the same legal errors, Judge Feuerstein held that "[b]ecause the record provides persuasive proof of plaintiff's disability, proper application of the legal standards would not contradict the weight of this evidence in the record, and 'the Commissioner failed to introduce evidence sufficient to sustain [her] burden of proving that [plaintiff] could perform the exertional requirements of sedentary work,' the proper course of action is to reverse the ALJ Decision and 'remand the matter to the Commissioner for a calculation of disability benefits.' " *Henningsen*, 111 F. Supp. 3d at 273 (quoting *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000)). So it is here.

**D. Delays Generally**

The Court notes that Finnegan has been waiting more than four years to resolve his disability case, as he has been forced to navigate the byzantine social security process. Sadly, these delays are all too common, and compared to the nightmare that other claimants have had to face to receive benefits, Finnegan is comparatively one of the lucky ones. *See, e.g.*, *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000), *superseded by statute on other grounds* (delay of six years); *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998) (delay of four years); *Sanchez v. Colvin*, 2015 WL 4390246, at *19 (E.D.N.Y. July 14, 2015) (delay of thirty years); *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 232 (N.D.N.Y. 2015) (delay of eight years); *Barbour v. Astrue*, 950 F.

Supp. 2d 480, 491 (E.D.N.Y. 2013) (delay of seven years); *Fernandez v. Astrue*, 2013 WL 1291284, at *20 (E.D.N.Y. Mar. 28, 2013) (delay of fifteen years); *Brown v. Barnhart*, 418 F. Supp. 2d 252, 262 (W.D.N.Y. 2005) (delay of seven years); *Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 198 (W.D.N.Y. 2005) (delay of twelve years); *Orr v. Barnhart*, 375 F. Supp. 2d 193, 201 (W.D.N.Y. 2005) (delay of five years); *Huhta v. Barnhart*, 328 F. Supp. 2d 377, 387 (W.D.N.Y. 2004) (delay of nine years); *McClain v. Barnhart*; 299 F. Supp. 2d 309, 330 (S.D.N.Y. 2004) (delay of nine years); *Morales ex rel. Morales v. Barnhart*, 218 F. Supp. 2d 450, 452 (S.D.N.Y. 2002) (delay of nine years); *Maldonado v. Apfel*, 2000 WL 23208, at *1 (S.D.N.Y. Jan. 13, 2000) (delay of six years); *Munford v. Apfel*, 1998 WL 684836, at *2 (S.D.N.Y. Sept. 30, 1998) (delay of four years); *Solann v. Comm'r of Soc. Sec.*, 1996 WL 518101, at *4 (E.D.N.Y. Aug. 28, 1996) (delay of ten years).

This is by no means an exhaustive list of such cases, even within the state of New York. However, it provides a representative sample of the problems disabled people face attempting to secure benefits through the labyrinthine social security system.

This will be no revelation to anyone who has been forced to work within the social security system, either as a party, lawyer, or adjudicator. But the Court wants to articulate its concerns. Those involved in the process should all take a hard look at ways to minimize this burden on disability applicants, who are among our most vulnerable citizens and cannot afford to wait years or sometimes decades to receive relief for their

urgent needs. As an example, it has become this Court's practice to prioritize disability cases and resolve them as early as possible within the workflow of chambers. Other courts may consider a similar solution. The Commissioner's office should also take a look at its internal practices and evaluate if there is anyway to expedite these cases to final disposition. And in cases such as this one, where the overwhelming weight of evidence is on the side of the disabled, the Commissioner and the ALJs should think twice before denying benefits. While lawyers must advocate for their clients, the Court believes that government lawyers also hold a special duty to the public at large and to the principles of justice and equity.

### III

For the reasons mentioned above, Finnegan's motion is granted, and the Commissioner's motion is denied. The case is remanded for the forthwith calculation of benefits.

**SO ORDERED**

/S/ Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 27, 2017